UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DR. JOSEPH IRRERA,

Plaintiff,

-vs-

UNIVERSITY OF ROCHESTER, et al.,

Defendants.

DECISION & ORDER

15-CV-6381

Plaintiff Dr. Joseph Irrera ("plaintiff"), a graduate of the University of Rochester's Eastman School of Music ("Eastman") brings this action against Eastman and one of its professors, Dr. Douglas Humphreys ("Humphreys") (collectively "defendants") pursuant to 20 U.S.C. §1681 et seq. ("Title IX"), the New York Human Rights Law, N.Y. Exec. Law §296 ("NYHRL") and the New York Civil Rights Law, N.Y. Civil Rights Law §40-c ("NYCRL"). Plaintiff alleges that Humphreys subjected him to sexual harassment, that Eastman knew of the harassment and failed to act, and that one or both defendants retaliated against plaintiff for complaining about the sexual harassment. Defendants have moved to dismiss plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6) (Dkt. #6), and plaintiff has cross moved to amend the complaint (Dkt. #11). For the reasons that follow, plaintiff's motion to amend the complaint is provisionally granted, the defendants' motion to dismiss is granted, and the amended complaint is dismissed in its entirety.

## FACTS

Beginning in 2007, plaintiff commenced a paid internship at Eastman, teaching piano to pre-college students. In 2009, plaintiff applied and was admitted to the Eastman's Doctor of Musical Arts ("DMA") program, and began taking piano lessons with Humphreys, a Piano Professor who also served as the Chairperson of Eastman's Piano Department.

Plaintiff contends that during his studies with Humphreys, Humphreys made unwanted sexual advances toward him, commencing with an incident in September 2010 when Humphreys caressed plaintiff's shoulder and rubbed plaintiff's arms for four or five minutes while sitting at the piano, and another occasion when Humphreys leaned into plaintiff at the piano in such a manner that Humphreys' crotch rested against plaintiff's back. Plaintiff avers that he asked Humphreys to stop, and that in retaliation, Humphreys, who was part of a three-person jury for plaintiff's first and second attempts to perform his first required solo recital in 2011, assigned plaintiff's performances a failing grade, and successfully influenced the other two jury members to do the same. (The first solo recital was one of four different recitals required by the Eastman's Piano Department. Plaintiff passed the other three, which were not judged by Humphreys). Plaintiff also alleges that Humphreys, who had previously praised plaintiff's playing, stated after plaintiff's solo recital attempts that plaintiff was "not a good pianist at all" and had sounded "like a wounded animal," and predicted that plaintiff "would never get a university professor job."

After January 2012, plaintiff discontinued his lessons with Humphreys and began taking lessons with a different faculty member.

Plaintiff alleges that in and around February 2012, he and his father had meetings with University of Rochester Dean Marie Rolf to complain about plaintiff's solo recital failures, and

that during those meetings, plaintiff complained about sexual harassment by Humphreys, and accused Humphreys of deliberately ensuring that plaintiff would fail his solo recital attempts in retaliation for plaintiff's rejection of Humphrey's alleged advances. Shortly thereafter, plaintiff and his father met with Dean Donna Brink Fox, and with University of Rochester Intercessor Kathy Sweetland, to summarize plaintiff's complaints concerning Humphreys. Plaintiff contends that in late March 2012, Humphreys, who had apparently learned of plaintiff's complaints, told plaintiff that if he (plaintiff) put his harassment allegations in writing, Humphreys would "make [plaintiff's] life a living hell."

Plaintiff progressed through his studies, and ultimately graduated from the DMA program in May 2014. Plaintiff claims that after his graduation, he was informed that his student internship, which he had begun in 2007, would be discontinued, as it was a form of student employment. However, plaintiff alleges that this reason was pretextual, because other Eastman graduates were allegedly permitted to continue interning after they graduated. He also claims, upon information and belief, that his failure to obtain teaching positions at some 28 colleges and universities to which he applied following his graduation is attributable to action by the defendants.

## DISCUSSION

### I. Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. Proc. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."

3

*Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987). In opposing the motion, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.    Plaintiff's Motion to Amend the Complaint

In support of his motion to amend the complaint, plaintiff has submitted a proposed amended complaint (Dkt. #12-1) which does not omit any appreciable substance from the original complaint, but rather expands upon the factual allegations of the original pleading. The defendants have responded, opposing the motion to amend and further supporting their motion to dismiss. In order to simplify the analysis of the pending motion, and solely for purposes of deciding it, the Court hereby grants plaintiff's motion to amend, and will proceed to address whether plaintiff's factual allegations in their entirety, as set forth in the amended complaint, are sufficient to state a plausible claim for relief.

## III.    Plaintiff's Sexual Harassment and Retaliation Claims Under Title IX, the NYHRL and NYCRL, Concerning Conduct Alleged to Have Occurred While Plaintiff Was a Student at Eastman

4

"Title IX provides a remedy to a student who is subjected to sexual harassment by a teacher or professor at an educational institution receiving federal funds." *Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 88-89 (2d Cir. 2011). Plaintiff alleges that he was subjected to unwanted sexual harassment when Humphreys touched or stroked his arms during a piano lesson in the spring of 2010, and on another occasion when Irrera leaned into plaintiff in such a way that his crotch rested against plaintiff's back, and that as a result of plaintiff's rejection of those contacts, Humphreys assigned – and caused the other two judges to assign – failing grades to each of plaintiff's first and second solo recital attempts in April 2011 and November 2011.

Initially, it appears that plaintiff's claims are barred by the three-year statutes of limitations applicable to Title IX, NYHRL and NYCRL claims. Such claims accrue, "the moment the plaintiff knows or has reason to know of the injury that is the basis of the complaint." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 429, 437 (S.D.N.Y. 2014), *aff'd*, 2014 U.S. App. LEXIS 17105 (2d Cir. 2014) (unpublished opinion).

Because plaintiff's complaint was not filed until June 24, 2015 (Dkt. #1), any claims arising prior to June 24, 2012, including plaintiff's claims of sexual harassment which allegedly occurred in April 2010 (variously styled as claims alleging hostile environment and quid pro quo sexual harassment), any claim of retaliation related to Humphreys' grading of plaintiff's solo recitals in and before November 2011, and plaintiff's deliberate indifference claim concerning Eastman's alleged failure to address plaintiff's complaints of sexual harassment in and around February 2012, are untimely, and are dismissed.

By way of his Amended Complaint, plaintiff has transparently attempted to expand the temporal reach of his claims by alleging additional acts of harassment that occurred within the

three-year statute of limitations. Specifically, plaintiff contends that at some point after his complaint to Eastman in or about February 2012 and continuing until plaintiff's graduation in May 2014, Humphreys variously winked at plaintiff, blew kisses, raised his eyebrows, or looked plaintiff up and down on several occasions when they encountered each other in common areas such as hallways and stairwells. Plaintiff argues that these allegations describe a "continuing violation" sufficient to render all of his allegations, from 2010 onward, timely.

Application of the continuing violation doctrine typically requires "compelling circumstances" where a plaintiff's ability to timely recognize or report sexual harassment has been impaired, such as conduct increasing in severity over an extended period, application of a policy which proves over time to be discriminatory, or a pattern of covert conduct that can only belatedly be recognized as unlawful. *Rebrovich v. County of Erie*, 544 F. Supp. 2d 149, 169 (W.D.N.Y. 2008). In general, "the scope of the continuing violation doctrine is limited." *Rutkowski v. Sears Roebuck Corp.*, 2000 U. S. App. LEXIS 6321 at *9 (2d Cir. 2000). As such, "[m]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).

Even when accepted as true and construed in his favor, plaintiff's allegations here do not describe a discriminatory policy, or otherwise present "compelling circumstances" in which plaintiff's ability to timely identify the sexual harassment of which he complains was hampered in any way. To the contrary, plaintiff admits that he recognized and believed that the April 2010 "arm-rubbing" and/or "leaning in" incidents were sexual harassment, and he characterized them as such in his complaints to several Eastman officials in February 2012. Because the subsequent alleged winking and kiss-blowing incidents by Humphreys are not part of the same course of

conduct or educational practice, but are overt, separate and distinct interactions, they are insufficient to establish a "continuing violation" for statute of limitations purposes.

I further note that, to the extent that plaintiff claims that Humphrey's looks or winks gave rise to standalone claims of sexual harassment or hostile environment, they are neither adverse educational actions nor sufficiently egregious to create a hostile environment. In order to comprise a hostile environment for Title IX purposes, actions must be "sufficiently severe or pervasive to alter the conditions of [plaintiff's] educational environment." *Shalom v. Hunter College of the City Univ. of N.Y.*, 2016 U.S. App. LEXIS 6258 at *3 (2d Cir. 2016) (unpublished decision). Occasional exposure to an instructor's allegedly flirtatious facial expressions or gestures, without more, is simply not sufficiently severe or pervasive to give rise to a hostile environment. *See generally Nieves v. Dist. Council AFSCME*, 2009 U.S. Dist. LEXIS 112653 at *17-*18 (S.D.N.Y. 2009) (in a Title VII discrimination case, conduct which included blowing kisses to plaintiff, complimenting plaintiff's appearance, and making jokes to plaintiff of a sexual nature, are not collectively severe or pervasive enough to approach the level of a hostile work environment), *aff'd*, 2011 U.S. App. LEXIS 9031 (2d Cir. 2011) (unpublished decision). Furthermore, plaintiff makes no allegation that he ever complained to Eastman about Humphreys' allegedly flirtatious looks and expressions in common areas, and has not otherwise alleged any basis by which liability for those actions could be imputed to Eastman.

Accordingly, plaintiff's sexual harassment and retaliation claims concerning conduct that occurred while he was a student at Eastman are dismissed.

## IV.    Plaintiff's Retaliation Claims Arising After Plaintiff's Graduation Under Title IX, the NYHRL and the NYCRL

Plaintiff has also alleged that defendants subjected him to retaliation after his graduation

from Eastman, in the form of denial of a continued student internship and negative employment references.

In order to state a claim for retaliation under Title IX, the NYHRL and/or NYCRL, plaintiff must plausibly allege: (1) that he engaged in a protected activity, such as making a complaint of sexual harassment; (2) that the defendants were aware of that activity; (3) that the plaintiff was subjected to an adverse school-related action; and (4) that there existed a causal connection between plaintiff's protected activity and the adverse action. *See e.g., Papelino,* 633 F.3d 81 at 91. *See generally Hyman v. Cornell Univ.*, 834 F. Supp. 2d 77, 84 (N.D.N.Y. 2011) (claims of discrimination and retaliation under Title IX, the NYHRL and NYCRL are analyzed under analogous standards).

Plaintiff alleges that because he and his father met with various University of Rochester Deans in February 2012 to complain about plaintiff's solo recital failures and Humphrey's sexual harassment, plaintiff was denied the opportunity to continue his paid student internship after he graduated in May 2014, [1] and that "upon information and belief," the defendants provided negative references by defendants to prospective employers to whom plaintiff had applied after graduation.

Assuming *arguendo* that these acts following plaintiff's graduation could nonetheless be considered "school-related," *(see e.g., Jordan v. Corning Cmty. College*, 2011 U.S. Dist. LEXIS 107289 at *14 (W.D.N.Y. 2011) (plaintiff who alleges termination from college and subjection to negative employment references has stated a plausible Title IX retaliation claim)), the

---

[1] To the extent that plaintiff's claim concerning employment as an intern, following his graduation, appears to more closely resemble a claim of employment discrimination under Title VII than one concerning educational action under Title IX, the Court notes that the Second Circuit has thus far declined to decide whether an employee of an educational institution may bring an action under Title IX, or is limited to seeking relief under Title VII, and district courts within the Circuit are divided on the issue. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 131-132, 131 n.1 (2d Cir. 2013) (declining to decide whether there is an implied private right of action for employment discrimination under Title IX). *See also Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp. 2d 224, 236 (E.D.N.Y. 2010) (noting split of authority and collecting cases).

8

attenuated, more than two-year temporal relationship between plaintiff's alleged protected activity in February 2012, and the defendants' alleged denial of a paid internship and/or provision of negative references in or after May 2014, is insufficient to suggest a causal relationship, nor has plaintiff pled sufficient other facts to suggest one. *See e.g.*, *Apionishev v. Columbia Univ. in the City of New York*, 2012 U.S. Dist. LEXIS 8160 at *36 (S.D.N.Y. 2012) ("a passage of years, as opposed to months, is surely too temporally remote to establish causation" between protected activity and retaliatory acts).

In addition, plaintiff's allegations concerning negative employment references are so conjectural as to be implausible. In sum and substance, plaintiff alleges that after he graduated from Eastman, he applied to over two dozen colleges and universities seeking employment, but was not granted interviews or hired by any of them. Plaintiff does not allege, and apparently lacks facts to allege, that he ever listed Humphreys or anyone else at Eastman as a reference on his resumé, that Eastman or Humphreys were ever actually contacted by any of the institutions to which plaintiff applied, or that anyone at Eastman ever gave a single reference to any of plaintiff's putative employers, let alone that those references were negative, or that they were the actual cause of plaintiff's failure to obtain employment.

Plaintiff appears to concede the wholly speculative nature of his allegations concerning negative references, arguing only that it would be "typical" for a prospective employer to contact an instructor such as Humphreys (Dkt. #12-1 at ¶72). Plaintiff reasons that, given the prestige that accompanies an Eastman degree and his status as a Steinway Artist, the *only* plausible explanation for plaintiff's failure to obtain interviews with prospective employers is that those employers "must have" contacted Eastman, must have been referred to Humphreys or to someone under Humphreys' control, and must have been given negative references, and that the

9

negative references could only have been motivated by a desire to retaliate against plaintiff for his rejection of Humphrey's advances and/or complaints about sexual harassment. (Dkt. #16 at 19).

Even accepting plaintiff's factual allegations as true and construing every reasonable inference in his favor, plaintiff's retaliation claims concerning negative job references require such a lengthy and tortured chain of unsupported supposition that they fail to satisfy even the most liberal standard of plausibility. *See e.g., Blutreich v. North Shore – Long Island Jewish Health System, Inc.*, 2015 U.S. Dist. LEXIS 44668 at *14-*15 (S.D.N.Y. 2015) (in order to state a claim for retaliation based on provision of negative references, plaintiff must provide "specific factual allegations that prospective employers decided not to hire Plaintiff due to bad references from Defendants": conclusory allegations that plaintiff failed to obtain jobs, and that such failure logically has "no other explanation" than negative references by a prior employer, are insufficient to state a plausible claim). Plaintiff's retaliation claims concerning conduct that occurred in and after his graduation in May 2014 are therefore dismissed.

## V. Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims

In addition to his discrimination and retaliation claims under Title IX, the New York Human Rights Law, and the New York Civil Rights Law, plaintiff alleges several additional state law claims against Eastman, including breach of contract, breach of the covenant of good faith and fair dealing, and negligence. The Court declines to exercise supplemental jurisdiction over those claims.

The exercise of supplemental jurisdiction is governed by 28 U.S.C. §1367, which states that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the

action within such original jurisdiction that they form part of the same case or controversy . . ."
28 U.S.C. §1367(a).  Supplemental jurisdiction may be declined, however, where all claims over
which the Court had original jurisdiction have been dismissed.  28 U.S.C. §1367(c).  The Second
Circuit has observed that, "in the usual case in which all federal-law claims are eliminated before
trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point
toward declining to exercise jurisdiction over the remaining state-law claims."  *Valencia ex rel.
Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).  The relevant factors include judicial economy,
convenience, fairness and comity.  *Id.*  Having disposed of plaintiff's federal claims and
corollary NYHRL and NYCRL claims, I find that the interests of economy, convenience,
fairness and comity are best served by declining to exercise supplemental jurisdiction over
plaintiff's remaining state law claims.


                                    **CONCLUSION**

        For the foregoing reasons, plaintiff's cross motion to amend the complaint (Dkt. #11) is
granted, and defendants' motion to dismiss the complaint (in its original form, and as amended)
(Dkt. #6) is granted.  Plaintiff's discrimination and retaliation claims under Title IX, the NYHRL
and NYCRL are dismissed with prejudice, and the Court declines to exercise jurisdiction over
plaintiff's remaining state law claims.

        IT IS SO ORDERED.

Dated:      May 23, 2016
            Rochester, New York

                                    HON. DAVID G. LARIMER
                                    United States District Court

11